UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSE IVAN POLANCO,
    *Plaintiff*,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,
    *Defendant*.

No. 3:18-cv-01063 (JAM)

**RULING ON CROSS MOTIONS TO REMAND AND AFFIRM DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Jose Ivan Polanco asserts that he is disabled and unable to work due to a combination of mental impairments. He has brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of Nancy A. Berryhill, Acting Commissioner of Social Security, who denied Polanco's application for Social Security disability insurance benefits. For the reasons discussed below, I will deny Polanco's motion to reverse or remand the decision of the Commissioner (Doc. #19) and grant the Commissioner's motion for judgment on the pleadings (Doc. #23).

**BACKGROUND**

I refer to transcripts provided by the Commissioner. *See* Doc. #13. Polanco filed an application for Social Security disability income on November 25, 2014, alleging a disability beginning on January 1, 2014. *Id.* at 170. Polanco's claim was initially denied on January 20, 2015. *Id.* at 98. The claim was denied again upon reconsideration on December 14, 2015. *Id.* at 105. He then timely filed a written request for a hearing by an administrative law judge (ALJ) on January 7, 2016. *Id.* at 109.

ALJ Louis Bonsangue held a hearing on January 26, 2017. *Id.* at 23. Polanco did not attend because he was hospitalized at the Yale Psychiatric Institute from January 9 until January 28, 2017. Doc. #19-2 at 4. Polanco's counsel, Meryl Anne Spat, appeared at the hearing, and vocational officer Silvio S. Reyes testified by phone. Doc. #13 at 23. After the hearing, the ALJ sent Polanco a notice to show cause for failure to appear, which he did not return. *Id.* at 165. On August 24, 2017, the ALJ issued a decision concluding that Polanco was not disabled within the meaning of the Social Security Act because, while Polanco is unable to work due to multiple impairments, "a substance use disorder is a contributing factor material to the determination of disability." *Id.* at 24. The Appeals Council affirmed the decision of the ALJ on April 20, 2018. *Id.* at 2. Polanco then filed this federal action on June 22, 2018. Doc. #1. In response, the Commissioner moved for judgment on the pleadings, asking this Court to affirm her decision. Doc #23.

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant is] able to meet with [his] physical or mental abilities and

vocational qualifications." 20 C.F.R. § 416.966(a)-(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether he qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits [his] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in the so-called "Listings" in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [he] has the residual functional capacity to perform [his] past work. Finally, if the claimant is unable to perform [his] past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122-23 (2d Cir. 2012) (internal alterations and citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(v) (explaining the five-step evaluation process). In applying this framework, an ALJ can find a claimant to be disabled or not disabled at a particular step and can make a decision without proceeding to the next step. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; at Step Five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

When there is medical evidence of an applicant's drug addiction or alcoholism (DAA), "the 'disability' inquiry does not end with the five-step analysis." *Cage,* 692 F.3d at 123; *see also* 20 C.F.R. § 416.935(a) (describing next steps). The Social Security Act was amended in 1996 to provide that "[a]n individual shall not be considered . . . disabled . . . if alcoholism or

3

drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Senior Citizens' Right to Work Act of 1996, Pub. L. No. 104-121, § 105(a)((1), 110 Stat. 847, 852 (codified at 42 U.S.C. § 1382c (a)(3)(J)). Therefore, if a claimant abuses drugs or alcohol and if the ALJ finds he or she is disabled, then the ALJ must consider whether a claimant's DAA is a contributing factor material to the determination that the claimant is disabled. The "critical question is whether the SSA would still find the claimant disabled if she stopped using drugs or alcohol." *Cage,* 692 F.3d at 123 (internal quotations and alterations omitted) (citing 20 C.F.R. § 416.935(b)(1)).

The ALJ here concluded that Polanco was not disabled within the meaning of the Social Security Act. At Step One, the ALJ determined that Polanco had not engaged in substantial gainful activity for 12 continuous months, despite a brief stint of employment from October through December 2015. Doc. #13 at 26.

At Step Two, the ALJ found that Polanco suffers from the following severe impairments: depressive disorder, bipolar disorder, post-traumatic stress disorder, anxiety disorder, schizophrenia, and substance addiction disorder. *Id.* at 26.

At Step Three, the ALJ determined that Polanco's impairments, including his substance abuse disorder, met the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)). *Id.* at 27. This means he is considered *per se* disabled without regard to his age, education, and work experience.

Next, the ALJ considered whether, if Polanco stopped abusing substances, his remaining limitations would be disabling. The ALJ found that "[d]uring periods of abstinence, [Polanco's] depressive disorder, bipolar disorder, post-traumatic stress disorder, anxiety disorder, and schizophrenia continue to cause more than a minimal limitation in [his] ability to perform basic

4

work activities." Doc. #13 at 31. However, the ALJ found that, if Polanco stopped using substances, he would not "have an impairment or combination of impairments that meet or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." *Ibid.* The ALJ found that Polanco, if sober, would have moderate limitations in interacting with others, in concentrating, persisting, or maintaining pace, and in adapting and managing himself. *Id.* at 31-32.

Having determined that Polanco would not be *per se* disabled if he did not abuse substances, the ALJ then moved on to Steps Four and Five. At Step Four, the ALJ found that, if Polanco stopped abusing substances, he "would have the residual functioning capacity to perform a full range of work at all exertional levels," with the following limitations: "he is limited to simple, routine, repetitive tasks; with no strict adherence to time or production quotas; can only tolerate infrequent and minor changes in work routine with prior notice thereof; cannot work with the public; and can only have superficial interaction with coworkers and supervisors." *Id.* at 33. The ALJ also found that Polanco's residual functional capacity (RFC) precludes performance of his past relevant work as a glass installer. *Id.* at 36.

At Step Five, weighing Polanco's age, education, work experience, and RFC, the ALJ concluded that Polanco has the RFC to perform a significant number of jobs in the national economy, such as lumber sorter, collator, and lens inserter. *Id.* at 37. In reaching this conclusion, the ALJ relied on the testimony of a vocational expert. The ALJ found that Polanco, if sober, would be capable of adjusting to one of these jobs. *Ibid.*

The ALJ thus concluded that Polanco's substance abuse disorder was a contributing factor material to the determination of disability; that he would not be disabled if he stopped the

5

substance use; and that he is therefore not disabled within the meaning of the Social Security Act. *Id.* at 38.

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

Polanco challenges the Commissioner's decision on several grounds. First, Polanco argues that that the ALJ did not fulfill his responsibility to affirmatively develop the record, preventing Polanco from receiving a full and fair hearing. Doc. #19-2 at 4. Second, Polanco disputes the ALJ's finding that Polanco's other impairments would not be disabling except for Polanco's DAA. *Ibid.* As part of this argument, Polanco claims that the ALJ improperly discounted and misinterpreted the opinions of his treating physicians. *Id.* at 13. Next, Polanco argues that the ALJ failed to take into account his difficulties working in proximity to other people, as well as the side effects of his psychotropic medication, when formulating his RFC. *Id.* at 15, 19. Lastly, Polanco faults the ALJ for considering DAA at all in the context of Polanco's schizophrenia diagnosis.

### *The ALJ's responsibility to develop the record*

An ALJ has a responsibility to affirmatively develop the record. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination. 20 C.F.R. § 404.1512(b)(1) (2017). But the duty is not limitless. The ALJ must further develop the record if the evidence before her is "inadequate . . . to determine whether [the plaintiff is] disabled." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

Polanco argues that the ALJ did not fulfill his responsibility to affirmatively develop the record when he failed to enforce a subpoena for a set of medical documents. The Social Security regulations provide that an ALJ may issue subpoenas for document production "when it is reasonably necessary for the full presentation of a case." 20 C.F.R. § 404.950. Polanco's counsel requested records from his hospitalization at the Yale Psychiatric Institute in January 2017. When she could not procure them, she asked the ALJ to subpoena them. In April 2017, the ALJ issued a subpoena requesting "[a]ll medical records for [Polanco] for the time period from 10/16/2016 to the present." Doc. #13 at 161. The records from his January 2017 hospitalization were never received. In August 2017, the ALJ issued his opinion finding Polanco not disabled within the meaning of the Social Security Act.

Polanco contends that his due process rights were violated because the ALJ made his decision without the subpoenaed records. Doc. #19-2 at 6. This argument lacks merit. ALJs have discretion not to enforce subpoenas, and the absence of the subpoenaed records did not create any obvious gaps in the record.

While at one time an ALJ may have been required to explain her reasons for not enforcing a subpoena, this is no longer the case. In 1983, the Second Circuit remanded a case

after an ALJ failed to state reasons for not enforcing a subpoena for employment records, which in turn resulted in other procedural problems. *See Treadwell v. Schweiker*, 698 F.2d 137 (2d Cir. 1983). But this decision was based on language in the SSA handbook that has since changed. In *Treadwell*, the Court wrote that "[t]he official handbook issued by the Social Security Administration's Office of Hearings and Appeals . . . provides that where there is failure to obey a subpoena, the ALJ should proceed with the hearing, and then decide whether to request enforcement via the Administration's Office of General Counsel. In either event, the ALJ is expected to include a memorandum explaining his choice." *Treadwell*, 698 F.2d at 141.

      To the extent that *Treadwell* required ALJs to explain their reasons for not enforcing a subpoena once it had been issued, the case's reasoning no longer applies because of intervening changes to the SSA handbook. While the handbook itself is not binding on this Court, the language of the handbook is relevant as to whether the agency complied with its own procedures. The handbook now reads, "If an individual refuses or fails to comply with a subpoena, the administrative law judge (ALJ) will consider any change in circumstance since issuing the subpoena and re-evaluate whether the evidence or facts requested are reasonably necessary for the full presentation of the case." Social Security Administration, Hearings, Appeals and Litigation Law (HALLEX) Manual, I-2-5-82: Noncompliance With a Subpoena (available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-82.html). The current handbook requires that the ALJ write a memo only if he decides to seek enforcement: "If the ALJ finds the information is reasonably necessary for the full presentation of the case, he or she will prepare a memorandum to the Office of the General Counsel (OGC) Regional Chief Counsel, requesting enforcement of the subpoena." *Ibid.*

8

Other district courts within the Second Circuit have concluded that the reasoning in *Treadwell* no longer applies because of intervening changes to the handbook. *See Gonell De Abreu v. Colvin*, 2017 WL 1843103, at *3, *5 (E.D.N.Y. 2017) (finding that "once an ALJ determines to issue a subpoena, it is not mandatory that he bring in the United States Attorney to enforce it; that is . . . a matter of discretion" and further rejecting argument that the ALJ was obliged to enforce the subpoena because he initially said he would do so before issuing a decision); *Serrano v. Barnhart,* 2005 WL 3018256, at *3-*4 (S.D.N.Y. 2005) (finding that the section of the SSA handbook cited by *Treadwell* does not currently require a memorandum explaining a choice not to enforce a subpoena, and noting that "other courts within this district have placed the issuance and enforcement of subpoenas within an ALJ's discretion"); *see also Bennett v. Colvin*, 2016 WL 308777, at *5 (N.D. Oh. 2016) (agreeing with *Serrano* in finding that "the ALJ's failure to articulate the reasons for not enforcing the subpoena does not automatically require a remand"), *judgment entered*, 2016 WL 320822 (N.D. Ohio 2016).

The Second Circuit has explained that "practical concerns strongly militate against adopting a rule establishing an absolute right to subpoena reporting physicians." *Yancey v. Apfel*, 145 F.3d 106, 113 (2d Cir. 1998). "We are particularly concerned that to accept, as a matter of law, that a disability claimant has an absolute right to subpoena a reporting physician would unnecessarily increase the financial and administrative burdens of processing disability claims while diluting the ALJ's discretion in how he develops the record." *Ibid.*

Furthermore, the *Treadwell* holding is based in part on the "other procedural infirmities" to which the ALJ's failure to enforce the subpoena led, including reliance on uncorroborated hearsay statements that could have been contradicted by documents and records. *See Treadwell*, 698 F.2d at 137, 144. Procedural deficiencies of this degree are not present here.

9

It is well established that there are limits to the ALJ's duty to affirmatively develop the record. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (finding that an ALJ was not under an obligation to further supplement the record with a medical source statement from one of plaintiff's doctors where the record already contained their treatment notes and a partially relied-upon opinion from a consultative examiner). Polanco does not provide any support for his assertion that, without the records from his stay at the Yale Psychiatric Institute, his record "is not complete and detailed enough to allow the ALJ to determine [his] residual functional capacity." Doc. #19-2 at 5 (internal quotations omitted).

Given that there were already extensive records from different doctors and consultative examiners, it was within the ALJ's discretion to find that he could resolve any ambiguities in the treating source statements without further development of the record. Additionally, the psychiatrist who treated Polanco at the Yale Psychiatric Institute, Dr. Mohamed, provided an opinion that is in the record. Doc. #13 at 826-36; Doc. #19-2 at 5. Dr. Mohamed stated that Polanco had mental health or substance abuse issues that impacted his ability to work. Doc. #13 at 832. In the client supplement accompanying Dr. Mohamed's report, Polanco stated that he did not use drugs. *Id.* at 840. Therefore, to the extent that Polanco wished to suggest that he was admitted to the Yale Psychiatric Institute during a period of sobriety and use the records to show that he is disabled even when sober, Dr. Mohamed's opinion has already fulfilled that purpose. Additionally, notes from Polanco's subsequent treatment at the Connecticut Mental Health Center contain descriptions of his hospitalization. *Id.* at 795-98, 809. There was no obvious gap in the record, and the ALJ acted within his discretion when he adjudicated the claim without gathering more evidence.

### *The ALJ's finding regarding materiality of Polanco's DAA*

The claimant bears the burden of proving that his DAA is not material to the determination that he is disabled. *See Cage,* 692 F.3d at 123-124. The ALJ found that Polanco did not meet that burden, and I conclude that there was substantial evidence to support the ALJ's conclusion.

The ALJ found that if Polanco stopped abusing substances, his "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence." Doc. #13-2 at 33. The ALJ cited several parts of the record where providers have stated or implied that substance abuse exacerbates Polanco's mental health symptoms. For example, during one hospital stay in December of 2015, a psychiatrist noted that "I suspect he is crashing from cocaine/heroin, and he will reconstitute similar to previous presentations with social work assistance and sobriety." Doc. #13-2 at 50. The ALJ also cited records from New Haven Hospital where, after admitting himself due to self-reported substance use, Polanco was sober for several days of hospitalization, and providers noted improvements in his thought processes and presentation over the course of his stay. *See, e.g.*, *id.* at 570 (reporting at admission that Polanco "relapsed on heroin and cocaine" and is reporting suicide); *id.* at 579 (two days later, reporting no suicidal ideation, provider noted that "since admission [] patient has been calm and cooperative"); *id.* at 685, 693 (admitted to hospital after self-reported heroin use; the following day, reported "some improvement" in suicidal ideation, where a doctor noted "suspect p[atien]t crashing from illicit drug use"); *id.* at 694-95 (the next day, provider observes that Polanco is still

11

irritable but no longer shows "evidence of acute psychiatric symptoms . . . that warrant further observation at this time"). There was substantial evidence to support the ALJ's conclusion.

Additionally, in Polanco's discharge paperwork from the Connecticut Mental Health Center in 2016, the clinician noted that "given his extensive and almost life-long [history] of [substance abuse], no [treatment], psychiatric or otherwise, would be effective unless his [substance abuse] [treatment] needs were addressed concurrently, if not first." *Id.* at 804. This is further "relevant evidence [that] a reasonable mind might accept as adequate to support [the] conclusion," *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (internal quotation marks and citation omitted), that the symptoms of Polanco's mental illness would improve and not be disabling in the absence of DAA.

### *The treating physician rule*

According to the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted). If an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must give reasons for this decision. "Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* at 129-30; *see also* 20 C.F.R. § 416.927 ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

Polanco's argument that the ALJ improperly discounted the opinions of his treating physicians is not persuasive. The ALJ clearly stated how much weight he was giving to each of

12

Polanco's treating physician's opinions and explained his reasons for doing so. Doc. #13-2 at 34-36. For example, the ALJ accorded the opinion of Gail Sicilia, APRN, only partial weight because he did not find her opinion "consistent with the record with regard to his functioning without the use of substances." *Id*. at 35. He also noted that Sicilia treated Polanco for a relatively short time and that her opinion does not differentiate between Polanco's functioning with and without substance use. *Id.* at 29. It was within the ALJ's discretion to resolve inconsistencies in the record and to assign partial weight to opinions that he found were not supported by the rest of the record.

### *The RFC finding*

It is well established that a calculation of RFC must be based on the medical record and not on the ALJ's lay opinion. *See Burgess*, 537 F.3d at 131 ("Neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion." (internal quotations omitted)). In calculating the RFC, "an ALJ is not required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*). The ALJ's RFC determination must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *7 (1996). The RFC finding "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be

unnecessary or superfluous." *McIntyre*, 758 F.3d at 150 (internal quotation marks and citation omitted).

Polanco argues that the ALJ failed to take into account his difficulties working in proximity to other people and his general difficulties maintaining socially appropriate behavior and appearances. Doc. #19-2 at 15. But the ALJ did take these considerations into account, assigning great weight to Dr. Uber's opinion that Polanco was "not well suited for a high-pressure work setting." Doc. #13-2 at 34. The ALJ also assigned partial weight to Dr. Hart's opinion that Polanco "would have some impairment relating to supervisors or coworkers." *Id* at 35. As a result, the ALJ's determination of Polanco's RFC provides for only limited interaction with coworkers and supervisors.

Polanco further argues that the ALJ failed to take into account the side effects of his psychotropic medication. Doc. #19-2 at 19. Dr. Mohamed listed two drugs, prolixin and cogentin, that "may affect patient's ability to work" but provided no details in the notes column titled "any effects of this medication that impact this patient's ability to work." Doc. #13 at 836. Polanco has not pointed to any other evidence in the record regarding the effects of his psychotropic medication. Numerous medications are listed in the treatment records and notes of many other doctors, and none of them raised concerns about the effect of the medication on his ability to work. For example, Dr. Hart wrote that Plaintiff would be successfully treated with medication, without flagging any concerns about the effect of medication on his ability to work. *Id.* at 347. The ALJ's determination of Polanco's RFC is supported by substantial evidence.

### *Polanco's remaining arguments*

Polanco's remaining arguments lack merit. First, Polanco argues based on the SSA Program Operations Manual System (POMS) that "substance abuse is not considered material

where there is a listing-level diagnosis of schizophrenia." Doc. #19-2 at 11. This is incorrect. POMS lists schizophrenia as an *example* of an impairment that *could be* disabling on its own. "DAA is not material when the claimant has a disabling impairment independent of DAA. The following list provides examples of other disabling impairments that the claimant may have that could be disabling on its own." Adjudicating a Claim Involving Drug Addiction or Alcoholism (DAA), Program Operations Manual System (POMS), Social Security Administration (available at https://secure.ssa.gov/poms.nsf/lnx/0490070050).

Relatedly, Polanco argues that "the diagnosis of schizophrenia … precludes a finding that drug and alcohol abuse is material to [his] disability," because the Diagnostic and Statistical Manual (DSM) of Mental Disorders includes as criteria for a schizophrenia diagnosis that "the disturbance is not due to the direct psychological effects of a substance." Doc. #19-2 at 9. The ALJ acknowledged that Polanco has a separate diagnosis of schizophrenia, Doc. #13 at 26, but found that, without the substance abuse disorder, that diagnosis would not make him disabled. *Id.* at 38. There is no merit to or support for Polanco's argument that the Social Security Act precludes the consideration of drug and alcohol use for claimants who suffer from schizophrenia.

Lastly, Polanco claims that the ALJ did not apply the steps of the sequential process a second time after finding that his impairments, including his substance abuse disorder, meet or exceed the listed impairments. This is incorrect. The ALJ did in fact go through the sequential process a second time, considering whether Polanco's impairments in the absence of his DAA would meet the listing, then considering his residual RFC and the existence of jobs in the national economy that he could complete. Doc. #13-2 at 31-38.

## CONCLUSION

For the foregoing reasons, the motion to reverse the decision (Doc. #19) of the Commissioner is DENIED, and the Commissioner's motion for judgment on the pleadings (Doc. #23) is GRANTED. The Clerk of Court shall close the case.

It is so ordered.

Dated at New Haven this 21st day of May 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge